IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

T-MOBILE WEST CORPORATION,

        Plaintiff,

   v.

CITY AND COUNTY OF SAN FRANCISCO,

        Defendant.

_____/

No. C 10-03011 CW

ORDER DENYING
PLAINTIFF'S
MOTION FOR
PARTIAL SUMMARY
JUDGMENT AND
GRANTING
DEFENDANT'S
CROSS-MOTION FOR
PARTIAL SUMMARY
JUDGMENT
(Docket Nos. 29
and 31)

This action arises from Defendant City and County of San
Francisco's decision to deny Plaintiff T-Mobile West Corporation's
application for a conditional use permit (CUP) for a proposed
wireless telecommunications facility at 725 Taraval Street in San
Francisco, California.  Plaintiff moves for partial summary
judgment on its claim that, in violation of the Telecommunications
Act of 1996 (TCA), the City did not issue a decision in writing
that is supported by substantial evidence.  The City opposes
Plaintiff's motion and cross-moves for partial summary judgment in
its favor on the same issue.  The motions were heard on February
10, 2011.  Having considered the papers submitted by the parties,
the Court DENIES T-Mobile's motion for partial summary judgment and
GRANTS the City's cross-motion for partial summary judgment.

BACKGROUND

San Francisco's Planning Code divides the City into various
"use districts."  S.F. Planning Code § 201.  In a Small-Scale
Neighborhood Commercial District, or NC-2 District, wireless

United States District Court
For the Northern District of California

transmission facilities are considered a "public use" and require a

conditional use permit.  Id. §§ 709, 711.83 and 790.80.  The City

Planning Commission is charged with making determinations regarding

applications for conditional use permits.  Id. § 303(a).  Under the

Planning Code, the Planning Commission is required to approve an

application and authorize a conditional use if, among other things,

the "proposed use or feature, at the size and intensity

contemplated and at the proposed location, will provide a

development that is necessary or desirable for, and compatible

with, the neighborhood or the community."  Id. § 303(c)(1).  A

Planning Commission decision regarding a conditional use

authorization may be appealed to the City's Board of Supervisors.

Id. § 308.1(a).

On June 18, 2009, T-Mobile, a telecommunications carrier,

applied for a CUP to install a wireless telecommunications facility

"consisting of eight panel antennas mounted to the existing

elevator penthouse structures" of a four-story, mixed-use building

located at 725 Taraval Street, which is located in an NC-2

District.  AR42-43.[1]  On February 25, 2010, following a hearing on

the matter, the Planning Commission approved T-Mobile's application

and authorized the installation of the facility.  The Planning

Commission found, among other things, that the facility was

"necessary or desirable, and compatible with, the neighborhood or

the community."  AR190.

On March 25, 2010, Robert Carson, a property owner, appealed

---

[1] Citations to the Administrative Record are designated "AR__."

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  the Planning Commission's decision to the Board, complaining that

2  the facility was not necessary, not desirable and not compatible

3  with the neighborhood.

4       On May 18, 2010, the Board held a public hearing on Carson's

5  appeal.  Carson submitted data, collected on or before February 23,

6  2010 by another resident, on signal strength in the vicinity of 725

7  Taraval.  This resident, who was a T-Mobile customer living near

8  the proposed facility site, measured signal strength using "the

9  'field test' mode" on a "T-Mobile Dash phone."  AR8.  The resident

10  noted that the "Receive Signal Strength Indication" (RSSI)

11  measurement, taken within the resident's home, showed values from

12  thirteen to twenty-two.  Id.  The resident stated, "A value between

13  12 and 20 is considered average.  A value over 20 is exceptional."

14  Id.  The resident also stated, "I've had good cellular coverage

15  through T-Mobile from the beginning regardless of the phone I have

16  used. . . . I don't have a problem with dropped calls."  Id.

17  Carson also offered additional "RSSI Readings," apparently

18  collected on May 14, 2010 from thirty-seven outdoor locations in

19  the vicinity of 725 Taraval; the RSSI values ranged from ten to

20  thirty-one.  Carson also asserted, and T-Mobile did not dispute,

21  that there were at least eight existing T-Mobile facilities within

22  a mile of 725 Taraval.  Finally, Carson offered T-Mobile's coverage

23  maps from its website.  Those maps, which approximated "anticipated

24  coverage outdoors," represented that T-Mobile had good voice and

25  data coverage in the vicinity of 725 Taraval.  AR9-13.  Carson

26  briefly testified about this evidence at the Board meeting, arguing

27  that it demonstrated that the facility was not necessary.

28                                     3

**United States District Court**
For the Northern District of California

1    At the hearing, T-Mobile responded with data showing that its

2 coverage in the neighborhood "would be greatly improved with this

3 project."  Tr. of May 18, 2010 Hrg. 51:9-10.  A map showed that

4 coverage in the neighborhood ranged from good to poor.

5 Specifically, in the area south of the proposed site, a signal

6 could be obtained only by "walking on the street."  Id. at 50:23.

7 T-Mobile asserted that the "only way to get the accurate picture of

8 the existing signals is to drive the neighborhood using the

9 appropriate software to gauge the signals" and that signal

10 measurement entails "a fairly sophisticated scientific testing

11 process," which requires analysis by engineers.  AR50-51.  T-Mobile

12 also offered data that, in the vicinity of the proposed site, there

13 were 1,200 dropped calls out of 470,903 total calls.  Finally, T-

14 Mobile asserted that it received three complaints from its

15 customers using phones within the neighborhood.  Notably, however,

16 the three complaints originated in an area that would not have

17 benefitted from the proposed facility.  Compare AR25 with AR27.

18    Several other members of the public objected to the proposed

19 facility.  Some raised concerns about the health effects of radio

20 frequency emissions.  However, at the beginning of the hearing, a

21 deputy city attorney informed the Board that the TCA prohibits

22 local governments and agencies from disapproving a wireless

23 transmission facility based on such concerns.  No member of the

24 public spoke in favor of T-Mobile.

25    In an 11-0 vote, the Board reversed the Planning Commission's

26 decision to approve T-Mobile's CUP application.  In relevant part,

27 the written findings of the Board stated,

28                                  4

**United States District Court**
For the Northern District of California

1

2

3

4

5

        2.    The public testimony at the public hearing and the public documentation submitted in support of [Carson's] objections to the decision of the Planning Commission supported [Carson's] position that there is no necessity for the proposed WTS [wireless transmission services] facility . . . because the proposed WTS facility is not necessary to meet [T-Mobile's] present services demands within the geographic service area defined by [T-Mobile].

6

7

8

9

10

        3.    The written and oral information provided by [T-Mobile] at the May 18, 2010 public hearing alleged that the proposed WTS facility would: (a) extend and enhance coverage and capacity; (b) support new data services that are available only for applicant's customers that use "smart phones;" and (c) support first responders in case of an emergency.  No members of the public appeared in support of the applicant's proposal. . . .

11

12

13

14

15

16

17

        4.    Notwithstanding the information submitted by [T-Mobile], the written and oral information provide[d] by [Carson] and his supporters at the May 18, 2010 public hearing showed that [T-Mobile] presently had acceptable service in the geographic area of the proposed WTS facility from [T-Mobile's] existing WTS facilities in the vicinity.  In particular, [Carson]: (a) submitted a study conducted in the neighborhood showing good coverage; (b) introduced advertising materials from [T-Mobile's] website showing [T-Mobile] has good coverage for voice and data service in the area of the proposed project; and (c) showed that [T-Mobile] has eight existing wireless facilities within a one-mile radius.

18 AR242-43.  In its findings, the Board noted that several members of

19 the public expressed concerns over radio frequency emissions

20 generated by the proposed facility.  The Board, however, expressly

21 disclaimed any reliance on these concerns.

22 LEGAL STANDARD

23     Summary judgment is properly granted when no genuine and

24 disputed issues of material fact remain, and when, viewing the

25 evidence most favorably to the non-moving party, the movant is

26 clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

27 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

28 5

**United States District Court**
For the Northern District of California

1  <u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir.

2  1987).

3                              DISCUSSION

4       The Telecommunications Act of 1996 is intended to "encourage

5  the rapid deployment of new telecommunications technologies" while

6  preserving "the authority of State and local governments over

7  zoning and land use matters."  <u>Sprint PCS Assets, L.L.C. v. City of</u>

8  <u>Palos Verdes Estates</u>, 583 F.3d 716, 721 (9th Cir. 2009) (citations

9  and internal quotation marks omitted).  To this end, the TCA

10  imposes restrictions on localities' control over the installation

11  of wireless telecommunications facilities.  <u>Id.</u>  One of these

12  limitations "is that '[a]ny decision . . . to deny a request to

13  place, construct, or modify personal wireless service facilities

14  shall be in writing and supported by substantial evidence contained

15  in a written record.'"  <u>Id.</u> (quoting 47 U.S.C.

16  § 332(c)(7)(B)(iii)).

17       Although T-Mobile alleges that the City violated the TCA in a

18  number of ways, the parties' current motions pertain only to this

19  limitation.  T-Mobile seeks partial summary judgment that the

20  City's written findings did not constitute a "decision in writing"

21  and that, even if they did, they were not supported by substantial

22  evidence.  The City seeks partial summary judgment that its

23  determination satisfied the "decision in writing" and substantial

24  evidence requirements of § 332(c)(7)(B)(iii).

25  I.   Decision In Writing

26       The "TCA requires local zoning authorities to issue a written

27  decision separate from the written record which contains sufficient

28                                   6

**United States District Court**
For the Northern District of California

1   explanation of the reasons for the decision to allow a reviewing

2   court to evaluate the evidence in the record supporting those

3   reasons." MetroPCS, Inc. v. City & Cnty. of S.F., 400 F.3d 715,

4   723 (9th Cir. 2005).  Under this standard, it is not sufficient for

5   an authority to stamp the word "DENIED" on a party's application.

6   Id. at 722 (rejecting standard set forth in AT&T Wireless PCS, Inc.

7   v. City Council, 155 F.3d 423 (4th Cir. 1998)).  However, this

8   standard does not require localities to "explicate the reasons for

9   their decision and link their conclusions to specific evidence in

10  the written record." MetroPCS, 400 F.3d at 721-22 (rejecting

11  standard set forth in Omnipoint Commc'ns, Inc. v. Planning & Zoning

12  Comm'n, 83 F. Supp. 2d 306 (D. Conn. 2000)).

13      Here, the Board's findings satisfy the "decision in writing"

14  requirement of § 332(c)(7)(B)(iii).  The five-page document recites

15  the facts of T-Mobile's application, refers to the May 18, 2010

16  hearing, specifies Carson's and T-Mobile's arguments at the hearing

17  and identifies the evidence submitted by Carson to support his

18  position.  The findings further state that the Board's decision was

19  based on the record, which contained the Planning Commission's

20  findings, testimony presented at the public hearing and Carson's

21  and T-Mobile's documentary evidence.

22      Despite this detail, T-Mobile argues that the findings are

23  insufficient because assertions are not paired with citations to

24  evidence and because the findings do not explain why the Board

25  rejected T-Mobile's evidence, even though the Planning Commission

26  accepted it.  However, MetroPCS rejected the need to tie

27  conclusions to specific evidence.  Further, MetroPCS does not

28                                  7

**United States District Court**
For the Northern District of California

1  require a detailed explication of the Board's decision.  The

2  findings "contain sufficient explanation to enable judicial

3  evaluation of the evidentiary support for its rationale."

4  MetroPCS, 400 F.3d at 723.  Accordingly, they are sufficient.

5      Thus, T-Mobile's motion for partial summary judgment, to the

6  extent that it is based on the "decision in writing" requirement,

7  is denied.  The City's cross-motion for partial summary judgment,

8  to the extent that it is based on the same, is granted.

9  II.  Substantial Evidence

10     Although the TCA does not define the term "substantial

11 evidence," courts have held "that this language is meant to trigger

12 the traditional standard used for judicial review of agency

13 decisions."  MetroPCS, 400 F.3d at 723 (citation and internal

14 quotation marks omitted).  Under this deferential standard, courts

15 may not overturn a locality's decision on "'substantial evidence'

16 grounds if that decision is authorized by applicable local

17 regulations and supported by a reasonable amount of evidence (i.e.,

18 more than a 'scintilla' but not necessarily a preponderance)."  Id.

19 at 725.  In other words, the evidence must constitute a showing

20 "that 'a reasonable mind might accept' as adequate."  Id. at 726.

21 Courts must consider the entirety of the written record.  Id. at

22 723.

23     As noted above, the San Francisco Planning Code authorizes

24 consideration of a neighborhood's need for a proposed use in

25 evaluating conditional use permit applications.  S.F. Planning Code

26 § 303(c)(1); see also MetroPCS, 400 F.3d at 725 (discussing section

27 303(c)(1)).  Here, the Board found that the facility was not

28                                  8

1  necessary because there was already "acceptable service" in the

2  relevant area.  AR242.  Specifically, the Board pointed to the

3  signal strength data submitted by Carson, T-Mobile's advertising

4  materials showing good coverage for voice and data services in the

5  neighborhood and T-Mobile's existing facilities in the vicinity of

6  725 Taraval.  T-Mobile did not dispute the accuracy of Carson's

7  signal strength data or that it had several other facilities close

8  by.  The written record also contained a letter from a T-Mobile

9  customer, who did not have a problem with dropped calls and stated

10  that indoor signal strength rated from average to exceptional.

11  Indeed, T-Mobile's own data showed that, in a given two week

12  period, out of 470,903 calls originating within the neighborhood,

13  only 1,198 were dropped, or one-fourth of one percent of the total.

14  The Board also noted that no member of the public supported T-

15  Mobile's application, which suggested a lack of a community need

16  for the facility.  And, as noted above, to the extent that T-Mobile

17  received complaints, they originated in an area east of the

18  proposed facility, which would not have benefitted from the

19  installation.  In sum, the written record contained evidence that

20  there was an adequate signal in the neighborhood, few calls were

21  dropped, a T-Mobile customer was satisfied and no members of the

22  public expressed support of T-Mobile's application.  A reasonable

23  mind would accept this evidence as adequate to support a conclusion

24  that the neighborhood surrounding 725 Taraval did not need the

25  proposed facility.

26      T-Mobile contends that the Board could not reasonably rely on

27  the evidence submitted by Carson because determining the adequacy

28                                      9

**United States District Court**
For the Northern District of California

1  of coverage is a "complex engineering issue."  T-Mobile Mot. 18.

2  T-Mobile challenges the data submitted by Carson as unscientific

3  and distances itself from its advertising materials.  Although it

4  is true that a resident who took signal measurements stated that it

5  was not a scientific test, there was no evidence in the written

6  record directly challenging the accuracy of the data.  Indeed, T-

7  Mobile's testimony at the May 18 hearing suggested that its data

8  were more accurate, not that Carson's data were inaccurate.  Nor

9  was there evidence in the written record suggesting that T-Mobile's

10 advertising materials misrepresented the signal strength in the

11 neighborhood.  While the documents stated that they only

12 approximated outdoor coverage, there was no evidence in the written

13 record suggesting that the Board should have discounted them.

14     T-Mobile also argues that substantial evidence did not support

15 the Board's rejection of the Planning Commission's finding that the

16 proposed facility was "necessary for T-Mobile to provide improved

17 communications and emergency resources."  T-Mobile Mot. 20.

18 However, at the May 18 hearing, Carson responded to this argument,

19 noting that, under federal law, a wireless telecommunications

20 provider must transmit all wireless 911 calls, including those

21 handled by another carrier.  Tr. of May 18, 2010 Hrg. 60:24-65:2;

22 see also 47 C.F.R. § 20.18(b).  There is no evidence that the

23 proposed project was necessary to improve the handling of wireless

24 911 calls in the neighborhood.

25     T-Mobile cites several cases, all of which are

26 distinguishable, not controlling or both.  Only a couple of cases

27 bear noting.  In T-Mobile Central, LLC v. Unified Government of

28                                10

**United States District Court**
For the Northern District of California

1  <u>Wyandotte County</u>, 546 F.3d 1299 (10th Cir. 2008), the Tenth Circuit

2  held that the locality's decision to deny a permit was not

3  supported by substantial evidence.  In particular, the court held

4  that a drive test, which was "intended to measure the level of

5  existing network coverage," was not substantial evidence of the

6  lack of dropped calls in a given area.  <u>Id.</u> at 1309.  The court

7  also rejected the locality's reliance on an "uncorroborated

8  assertion . . . that T-Mobile's service in the targeted area was

9  'pretty good.'"  <u>Id.</u>  Here, the City did not make such errors.  It

10  did not rely on a metric, intended to measure one characteristic,

11  to measure another parameter.  Nor did it rely on uncorroborated

12  assertions.

13      T-Mobile's reliance on <u>AT&T Wireless Services of California,</u>

14  <u>LLC v. City of Carlsbad</u>, 308 F. Supp. 2d 1148 (S.D. Cal. 2003),

15  which predated the Ninth Circuit's decision <u>MetroPCS</u>, is also

16  unavailing.  There, the court rejected the city's expert's

17  testimony because his conclusions did not result "from independent

18  research unconnected with" the case and because he failed to

19  provide "any objective criteria by which the court may evaluate his

20  opinion."  <u>Id.</u> at 1157.  The court also noted that it was not

21  required to "accept as substantial evidence impossible, incredible,

22  unfeasible, or implausible testimony."  <u>Id.</u> at 1159 (citation and

23  internal quotation marks omitted).  Here, T-Mobile insists that the

24  Court, like the <u>City of Carlsbad</u> court, must play its "gatekeeping"

25  role under <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.</u>, 509 U.S.

26  579 (1993); however, neither T-Mobile nor the City has offered

27  expert testimony to which Federal Rule of Evidence 702 applies.

28                                  11

Further, unlike the City of Carlsbad, the Board here did not rely on impossible, incredible, infeasible or implausible testimony.

Finally, T-Mobile argues that the Board's decision must be overturned because it failed to rebut the Planning Commission's determination.  MetroPCS, which also involved the Board's decision to overrule the Planning Commission, does not require this.

The Board's decision that T-Mobile's proposed facility was not necessary for the neighborhood is supported by substantial evidence.

CONCLUSION

For the foregoing reasons, the Court DENIES T-Mobile's motion for partial summary judgment (Docket No. 29) and GRANTS the City's cross-motion for partial summary judgment (Docket No. 31).  The Court summarily adjudicates that, with respect to T-Mobile's CUP application, the Board issued a decision in writing that was supported by substantial evidence.

IT IS SO ORDERED.

Dated: 2/14/2011

CLAUDIA WILKEN
United States District Judge

12